IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
**TAMPA DIVISION**

Kenneth P. Winnard
a Florida resident,

      Plaintiff,

-v-                          CASE NO.:  8:10 CV 2456 26 TBM


National Board of Medical Examiners of the United
States of America,
a District of Columbia Not for Profit Organization,

      Defendant.

_____/


## <u>COMPLAINT- INJUNCTIVE AND DECLARATORY RELIEF</u>

Plaintiff, Kenneth P. Winnard ("Mr. Winnard") alleges as follows:

1.     This action challenges the discriminatory denial of reasonable testing

accommodations as requested by plaintiff, Mr. Winnard, on the United States Medical

Licensing Exam Step 1 ("USMLE Step 1" or "Step 1").   The discrimination challenged

herein has deprived plaintiff Winnard, a person with disabilities, from taking the USMLE

Step 1 examination on a level playing field with his non-disabled peers.   These civil rights

violations are ongoing and include discrimination and failure to provide appropriate and

reasonable accommodations in violation of the Americans with Disabilities Act, 42 U.S.C.

§12101, et. seq. as amended ("ADA") .   Immediate and permanent injunctive relief is

necessary to ensure that Mr. Winnard is no longer excluded from, deterred from or otherwise

discriminated against in taking the USMLE Step 1.

2.      Defendant National Board of Medical Examiners (NBME) has failed to provide plaintiff Winnard reasonable testing accommodations which includes extra time (100% or double time) on the USMLE Step 1 and testing in a non-distracting environment.  Plaintiff Winnard submitted to the NBME extensive documentation of his disabilities and entitlement to accommodations as required by the defendant's accommodation application policies.  Mr. Winnard brings this action to enforce his statutory rights to reasonable accommodations and equal educational opportunities under the ADA.

3.      Defendant NBME administers the USMLE Step 1, a standardized exam and requisite for medical licensure, medical school graduation and residency eligibility in the United States.  The NBME has the legal, educational and professional responsibility to offer reasonable testing accommodations to individuals with disabilities on the USMLE Step 1. Such accommodations, which are neither expensive nor difficult to provide, allow individuals with learning disabilities and other brain based disabilities, like plaintiff Winnard, to demonstrate their aptitude and skill level.

## JURISDICTION

4.      This action arises under the laws of the United States, specifically the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 et. seq. Therefore, this Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. §1331 and 1343(a)(4). This Court also has jurisdiction pursuant to 42 U.S.C. § 12188(a)(1), which incorporates the provisions of 42 U.S.C § 2000a-3(a), providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title III of the ADA.

5.     This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §2201(a) and further relief pursuant to 28 U.S.C. §2202.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendant is doing business in this judicial district by virtue of administering the USMLE Step 1 in this district and has sufficient contacts for personal jurisdiction.  Alternatively and cumulatively, venue is proper in this Court pursuant to 28 U.S.C. §1391 in that acts of discrimination have taken place in this District; plaintiff attends college and resides within this District and intends to take the USMLE Step 1 within this District.

## PARTIES

7.     Mr. Winnard is a third year medical student at the Florida State University College of Medicine ("FSUCOM").  He is resident of Sarasota, Florida.  Mr. Winnard intends to take the USMLE Step 1 in November 2010.  Mr. Winnard is a person with a disability under the ADA and is entitled to federal protection and appropriate accommodations from defendant.

8.     NBME is a District of Columbia not-for-profit organization headquartered in Philadelphia, Pennsylvania.  NBME administers the USMLE, a three step examination, the successful completion of which is required for medical licensure in the United States.  Additionally, one's level of performance on the USMLE is a prominent factor used in the highly competitive candidate selection process by residency training programs.  Defendant is a private entity that offers examinations related to applications and credentialing to postsecondary education, professional and trade purposes and as such is subject to the non–discrimination and reasonable accommodation requirements of the ADA. The NBME

administers the USMLE throughout the country, including in Florida and, specifically, the Middle District of Florida.

9.      NBME engages in business in Florida and this judicial district and this action arises from those business activities.

## FACTS

10.      Mr. Winnard is a third year medical student who is expected to graduate medical school in May 2012.   In order for Mr. Winnard to obtain his medical licensure, he is required to pass separate phases of the USMLE, commonly referred to as Step 1, Step 2 Clinical Skills, Step 2 Clinical Knowledge and Step 3.  Mr. Winnard is currently preparing to take USMLE Step 1 on November 22 and 23, 2010 in Sarasota, Florida.

11.      Mr. Winnard is affected by learning disabilities including a reading disorder (dyslexia)[1] and a spoken language disorder affecting comprehension and word retrieval. The Defendant has contrary to the ADA, refused and continues to refuse to provide reasonable accommodations for Mr. Winnard's disabilities by refusing to provide him with additional time and a non-distracting setting to take the USMLE Step 1.

12.      If Mr. Winnard does not receive appropriate accommodations on the Step 1, his exam results will not reflect his aptitude and achievement level as required by law.

---

[1]      Dyslexia is a neurobiologically-based language impairment defined by a difficulty in reading that does not result from global intellectual or motivational deficits.  Dyslexia is a specific learning disability that is neurobioligcal in origin.  It is characterized by difficulties with accurate and/or fluent word recognition and by poor spelling and encoding abilities.  Their difficulties typically result from a deficit in the phonological component of language that is often unexpected in relation to other cognitive abilities and the provision of effective classroom instruction. Lyon, G. R., Shaywitz, S. E. & Shaywitz, B. A. (2003). A definition of dyslexia. Annals of Dyslexia, 53, pp. 1-14.

Moreover, he may score poorly or fail the examination which would adversely impact his ability to graduate medical school, obtain medical licensure and/or qualify for a residency program.

13.     Mr. Winnard's situation is further exacerbated by the fact that FSUCOM requires a student to take and pass Step 1 of the USMLE in order to begin the Third Year of FSUCOM.  While FSUCOM has granted Mr. Winnard a scheduling exemption that allowed him to begin his third year rotations, the exemption is conditioned upon Mr. Winnard taking and passing Step 1 by November 26, 2010.

### Winnard's History of Disability and Accommodations

14.     As early as first grade Mr. Winnard and his parents had noticed that he had several difficulties with learning and reading in school.  Teachers advised Mr. Winnard's parents that he was far behind his peers.  Consequently, Mr. Winnard received intensive instruction and attended summer school in an attempt to catch up to his peers during first and second grade.

15.     In September 1989, when Mr. Winnard was nine years old and entering third grade, he was referred to Thomas R. Tondo, Ph.D. for psycho-educational evaluation. As a result of Dr. Tondo's evaluation, he diagnosed Mr. Winnard with a specific learning disability in the areas of reading and spelling.  He further recommended placement in a class for learning disabled to provide specially designed instruction for reading and spelling. Consequently, Mr. Winnard was issued an Individualized Education Program (IEP) and placed in special education classes to remediate his deficits in reading, spelling and

supplemental language.[2]

16.     Mr. Winnard continued to receive special education services through an IEP that addressed academic areas as well as behavioral needs (excessive talking and off task behavior). Pursuant to the IDEA, Mr. Winnard received his three-year reevaluation in May 1993,[3] which continued to demonstrate a profile consistent with dyslexia.

17.     During middle school, Mr. Winnard received special education services with partial placement in a class for students with specific learning disabilities pursuant to an IEP. Mr. Winnard also received accommodations and supports including extended time on tests and quizzes. He also received extensive tutoring in various subjects outside of school.

18.     Mr. Winnard continued to have an IEP at the beginning of high school. However, due to the stigma coupled with the desire to participate in classes without support, Mr. Winnard was declassified for special education purposes at the end of 9th grade. However, Mr. Winnard continued to receive informal accommodations including extended time on tests particularly tests which involved reading.

19.     Mr. Winnard first attempted the SAT in May 1998, at the end of his eleventh grade year, without extended time. He achieved scores of 370 (10th percentile) Verbal and 520 (52nd percentile) Math. Mr. Winnard's low score, particularly in the verbal section was due to his inability to complete a substantial portion of the exam. Mr. Winnard's Verbal SAT score was well below the average range for the SAT and well below what would have been

---

[2]     Pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400 *et seq.*, public schools are obligated to provide specially designed instruction, which includes accommodation and adaptations to a covered individual's educational program. This specially designed instruction which includes adaptations and accommodations are set forth in a document referred to as an Individualized Education Program (IEP).

[3]     20 U.S.C §1414(2)(B) provides reevaluations shall occur "at least once every 3 years."

expected given his high school grade point average and high IQ.

20.     After the difficulties Mr. Winnard experienced with the SAT, he was seen for a psycho-educational evaluation with Edward H. Dougherty, Ph. D. in October and November of 1998.  Based on his evaluation, Dr. Dougherty concluded that Mr. Winnard required more time than most students to understand, read, and write assignments but his disability was ameliorated by the availability of extra time with block scheduling. Dr. Dougherty further concluded that Mr. Winnard could not read, spell, or write at the level of his intelligence and was significantly impaired. Dr. Dougherty determined that Mr. Winnard was a learning disabled student and eligible for special education placement.  Dr. Dougherty recommended testing accommodations, including extended time, having questions read aloud with answers given aloud or by pointing to the answer, and additional breaks.

21.     Following Dr. Dougherty's evaluation, Mr. Winnard applied for and was granted double extended time on the SAT.  He took the test with extended time in January 1999, achieving markedly improved scores of 640 (88th percentile) Verbal and 730 (97th percentile) Math.

22.     Mr. Winnard entered Florida State University in the fall of 1999.  Upon entering, Mr. Winnard registered for disability support and accommodations with FSU.  The accommodations FSU granted to Mr. Winnard included double extended time on tests, permission to record lectures, access to a student-notetaker, and access to tutorial services.

23.     In March 2003, during his senior year at FSU, Mr. Winnard was seen for an updated psychological evaluation by Jeannette Taylor, Ph. D.  The evaluation again showed that Mr. Winnard had skills below the level of most people on measures of decoding, single-

word reading and spelling, consistent with dyslexia. The Dr. Taylor diagnosed a reading disorder and a disorder of written expression. The Dr. Taylor recommended double time on classroom tests, standardized tests and writing assignments, no penalty for spelling errors in written work completed in class, permission to record lectures, access to other students' notes or a note-taker, use of audio textbooks and tutoring when needed.

24.     Mr. Winnard took the Medical College Admission Test (MCAT), a standardized test required of all students seeking admission into an American medical school, in August 2004. Based on the Dr. Taylor's evaluation and his prior documented history, Mr. Winnard was granted double time and testing in a separate room on the MCAT.

25.     Mr. Winnard entered FSUCOM in the summer of 2006. FSUCOM requires entering students to take and pass two courses during their first summer, Doctoring and Clinical Anatomy. Mr. Winnard wanted to try medical school without accommodations, because he hoped to avoid the perceived social stigma of a disability. However, because he was unable to complete exams and assignments in the allotted time, Mr. Winnard did not complete the requisite criteria in Clinical Anatomy to continue in the fall semester. FSUCOM accepted Mr. Winnard return to medical school in the summer of 2007 under a probation plan.

26.     Realizing he needed accommodations to address the limitations caused by his disability, Mr. Winnard provided his medical school proof of his disability. Mr. Winnard obtained approval from FSUCOM for the same accommodations that he had in college, specifically double time on tests, permission to tape record lectures, and access to a note-taker.

8

27.    Mr. Winnard returned to FSUCOM in the summer of 2007, with accommodations.  He repeated the Clinical Anatomy course and earned an A.  Even with the accommodations, Mr. Winnard has continued to struggle, because medical school necessarily involves the study of an incredible amount of material and Mr. Winnard needs more time to understand the presented material than most students.  However, with reasonable and appropriate accommodations, Mr. Winnard has excelled in medical school.

28.    Despite his long history of disabilities, Mr. Winnard has achieved considerable academic success due in large part to accommodations, tutoring and special education.

### The USMLE Step 1

29.    According to the NBME, "the USMLE Step 1 examination is intended to assess whether [a medical student] understand[s] and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy."[4]

30.    The Step 1 examination consists of questions presented in standard multiple choice formats.  Step 1 has approximately 336 multiple choice test items, divided into seven 60-minute blocks, administered in one eight hours testing session.

31.    The NBME develops and administers the USMLE Step 1 at various test sites and on various dates throughout the United States. The results of each student's scores are reported to that student's medical school.

32.    Mr. Winnard must pass the USMLE Step 1 in order to maintain his eligibility

---

[4]    http://usmle.org/General_Information/bulletin/2010/overview.html (last visited October 31, 2010).

to remain in medical school.  Furthermore, passing the USMLE Step 1 is required to graduate

medical school, to enter into a residency program, to be eligible to take the USMLE Step 3

examination and to ultimately obtain medical licensure.  Furthermore, a failed attempt or

poor performance on the Step 1 can adversely impact his acceptance into a residency training

program.

### NBME's Denials of Winnard's Requests for Accommodations

33.     In August 2009, Mr. Winnard underwent a psycho-educational evaluation

with Dr. Carol Painter[5] in order to provide current information when applying for

accommodations on the USMLE Step 1, as required by the NBME's guidelines for

documenting disabilities.

34.     Dr. Painter's evaluation confirmed that Mr. Winnard has specific learning

disabilities in the areas affecting reading and written language.  Specifically, Dr. Painter

diagnosed Mr. Winnard with a reading disorder and disorder of written expression.  In

addition, Dr. Painter recommended that Mr. Winnard be entitled to double time on both

classroom exams and standardized tests, including NBME subject exams and the USMLE

Step 1 exam, as well as testing in a non-distracting environment.

35.     By letter dated December 3, 2009, Mr. Winnard submitted to the NBME a

request and application for reasonable accommodations on the USME Step 1.  Mr. Winnard

requested the accommodation of double extended time and a non-distracting setting.

Included with Mr. Winnard's letter were the following documents supporting his request for

---

[5]     Dr. Painter is the Director of Student Counseling Services at FSUCOM where she is responsible for
providing diagnosis and treatment in the form of mental health therapy, psychoeducational evaluations, and
academic support to students, staff and faculty of FSUCOM.

accommodations:

    a. USMLE Applicant's Request for Test Accommodations;
    b. USMLE Certification of Prior Test Accommodations;
    c. Personal Statement from Mr. Winnard;
    d. Carol A. Painter, Ph.D., August 2009 Psycho-educational report and credentials;
    e. Jeanette Taylor, Ph.D., March  2003 Psycho-educational report;
    f. Edward H. Dougherty, Ph.D., October 1998 Psycho-educational report;
    g. Thomas R. Tondo, Ph.D., September 1989 Psycho-educational report;
    h. Results record from Wechsler Intelligence Scale for Children-Revised and Wide Range Achievement Test-Level I; 9/2/1989 from Tondo report;
    i. Individualized Education Program; 11/13/1989 from Tondo report;
    j. Result record of Woodcock Reading Mastery Tests-Revised; 6/6/1990 from Tondo report;
    k. Individualized Education Program; 6/7/1990;
    l. Individualized Education Program; 9/25/1992;
    m. SLD Three Year Re-evaluation and K-TEA achievement test results; 5/93 and 2/93 respectively;
    n. Individualized Education Program; 9/30/1993;
    o. Letter of August 29, 2000, Lauren Kennedy, Director of Student Disability Resource Center, Florida State University;
    p. Letter of March 13, 2003, Lauren Miller, Director of Student Disability Resource Center, Florida State University;
    q. SAT Program, Student Interim Report; 2/24/1999;
    r. AAMC MCAT Report of Scores;  8/12/2004;
    s. Florida State University Transcript, undergraduate and medical school;
    t. AMCAS Application report-2006 entering class.

36.      The forgoing documentation provided current and historical evaluations which established that Mr. Winnard has had a long and well documented history of learning disabilities that impact his reading, learning, comprehending and processing written material at the same rate as most people. Moreover, the foregoing documentation provides proof that Mr. Winnard previously received double extended time accommodations in school and on several standardized examinations.

37.      By letter dated February 24, 2010, the NBME rejected Mr. Winnard's request for accommodations on the purported basis that the documentation provided by Mr. Winnard

did not demonstrate that he is currently substantially limited in a major life activity as compared to most people, or that additional testing time is an appropriate modification for him.

38.    By letter dated April 22, 2010, Marissa L. Pizzi, Esquire on behalf of Mr. Winnard, requested that NBME review and reconsider the previously provided documents and grant Mr. Winnard the requested reasonable accommodations.  By letter dated May 25, 2010, the NBME maintained its rejection of Mr. Winnard's request for reasonable accommodations, and argued that its analysis proved that he was not disabled under the law. Its analysis, however, was consistent with case law in which the NBME was a defendant and which was rejected by Congress in the ADA's 2008 amendments.

39.    In June 2010, Mr. Winnard underwent a neuropsychological evaluation with Robert L. Mapou, Ph. D.  Dr. Mapou's evaluation resulted in a diagnosis of specific learning disabilities in the areas affecting reading and written language.  Specifically, Dr. Mapou diagnosed Mr. Winnard with Dyslexia (784.61; DSM-IV: Reading Disorder, 315.0) and Spoken language disorder affecting comprehension and word retrieval (784.5, DSM-IV: Mixed expressive and receptive language disorder, 315.31).  In addition, Dr. Mapou recommended continued accommodations for Mr. Winnard at FSUCOM, for Steps 1, 2 and 3 of the USMLE and for the specialty board examination.  The accommodations recommended by Dr. Mapou included double time on tests, use of a computer for tests that require writing, individual or small group testing, preferential seating in classes, and access to a student note-taker.

40.    By letter dated September 8, 2010, Marissa Pizzi, Esquire submitted Dr.

Mapou's report of his evaluation of Mr. Winnard.  Ms. Pizzi requested that NBME

reconsider is prior denial of reasonable accommodations.[6]

41.     By letter dated September 17, 2010, Clint Wallace, Esquire, counsel on behalf

of Mr. Winnard, reiterated the request to provide Mr. Winnard the reasonable

accommodations of double extended time and a non-distracting setting.

42.     By letter dated September 30, 2010, NBME recognized that Mr. Winnard is a

person with a disability and entitled to reasonable accommodations.  However, the NBME

granted the accommodation of time and a half extended time.  Accordingly, the NBME

rejected Mr. Winnard's request for double time and a non-distracting setting. In doing so, the

NBME did not state the evidence or rational upon which it based its decision.

43.     In spite of never having met Mr. Winnard, never having tested him or never

having evaluated him, NBME ignored multiple qualified professionals who observed and

evaluated Mr. Winnard and his history of receiving double extended time in school and other

standardized examinations.

44.     The requested accommodations of double extended time and a non-distracting

setting are necessary to appropriately accommodate the condition and manner of Mr.

Winnard's limitations.  The test modifications offered by NBME is not accommodating of

Mr. Winnard's disabilities and he will be unable to demonstrate his actual knowledge, skills

and abilities on this examination and in medical school without them.

45.     Mr. Winnard has an indisputable disability that substantially limits his major

---

[6]     Because Mr. Winnard's eligibility period lapsed from the December 2009 request for accommodations, he had to reapply to take the USMLE Step 1 and pay the additional fee.  Moreover, Mr. Winnard submitted a new Applicants Request for Test Accommodations and Certification of Prior Test Accommodations.

life activities of reading, comprehending and processing written material at the same rate as most people. Under the ADA, Mr. Winnard is entitled to the accommodation double extended time and a non-distracting setting. NBME's refusal to provide the requested reasonable accommodations for persons with disabilities is a violation of Mr. Winnard's rights under the ADA.

46.     As a direct and proximate result of NBME's violation of the ADA, Mr. Winnard will be unable to complete his medical school education in the same manner as his classmates if he does not successfully complete the USMLE Step 1. Moreover, he will be placed at a distinct disadvantage of competing for quality residency positions if he must take the exam without the necessary accommodation for his disability. He will be irreparably harmed because he will lose the extensive time he has invested in medical school and preparation for the examination; and he will be prevented from competing on a level playing field with other students in medical school.  In the worst case scenario, Mr. Winnard's medical career and dream could end if he is unable to pass the USMLE Step 1, because the NBME will not accommodate his disability as required by the ADA.

47.     Mr. Winnard requires the requested accommodations on the USMLE Step 1 examination not to gain an advantage, but to attempt to level the playing field because his functional limitations impact his ability to take this examination that non-disabled test takers do not experience.

48.     Mr. Winnard through counsel has notified NBME of its violation of the ADA and requested that they remedy this matter by providing the requested accommodations.  Mr. Winnard through counsel has also advised NBME of his intention to file this litigation if the

matter is not remedied.

## COUNT I - VIOLATION OF THE ADA; REQUEST FOR INJUNCTIVE RELIEF

49.     Mr. Winnard incorporates by reference Paragraphs 1 through 48 as if fully set forth.

50.     Mr. Winnard is an individual with a disability within the meaning of the ADA, 42 U.S.C. §12101. Mr. Winnard is a qualified individual within the meaning of the ADA in that he meets all the eligibility criteria for taking the USMLE Step 1 examination.

51.     Mr. Winnard requires reasonable accommodations to participate in a fair, full, and equal basis on the USMLE Step 1.  The modifications that Mr. Winnard needs would not impose a fundamental alteration, but would attempt to level the field and allow his aptitude and abilities to be fairly and accurately measured.

52.     Defendant NBME administers the USMLE Step 1 examination, an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

53.     The ADA, 42 U.S.C. § 12189, requires Defendant NBME to offer these examinations in a manner accessible to persons with disabilities.

54.     The Department of Justice Regulations mandate that a private entity offering examinations modify its examinations as necessary to ensure full and equal access to persons with disabilities, including through the provision of extra time to permit completion  28 C.F.R. §§ 36.309(b) & (c).

55.    The Department of Justice Regulations prohibit Defendant NBME from administering the USMLE Step 1 without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).

56.    The accommodations requested by Mr. Winnard do not fundamentally alter the measurement of the skills or the knowledge which the examination is intended to assess. Furthermore, they do not create an unfair advantage for Mr. Winnard nor results in an undue burden to Defendant NBME.

57.    Defendant NBME has discriminated, and continues to discriminate against Mr. Winnard on the basis of his disability by denying him an equal opportunity to demonstrate his aptitude and achievement level on the USMLE Step 1 in violation of the ADA, specifically 42 U.S.C. 12182.

58.    Defendant NBME's discriminatory policy and practices violate Plaintiff Winnard's rights under the ADA and the regulations promulgated thereunder. Defendant's discriminatory policies and practices include but are not limited to:

a.    Failure to grant accommodations when Mr. Winnard submitted the requisite documentation and provide documentation of a history of comparable accommodations on standardized examinations and other academic examinations.

b.    Failure to give considerable weight to Mr. Winnard's evaluators.

c.    Failure to provide a clear explanation for NBME's denial.

d.    Failure to engage in good faith in the interactive process to consider and implement effective reasonable accommodations to Mr. Winnard's disability.

e.    Failure to give considerable weight to Mr. Winnard's prior approval and use of accommodations in school and on standardized examinations.

16

    f.   Failure to conduct a proper review and apply appropriate legal standards to Mr. Winnard's request for reasonable accommodations.

    g.   Placing an extreme burden of proof, beyond what is required by the ADA, to establish Mr. Winnard's disability or need for accommodations.

59.    Mr. Winnard will be irreparably harmed if the NBME continues its illegal refusal to provide him the reasonable test accommodations as requested and unless this Court grants preliminary injunctive relief prohibiting the continued violation of Mr. Winnard's ADA rights and compelling the NBME to provide the requested accommodation, in that:

    a.   Mr. Winnard's medical school career will be placed on hold because a passing score on the USMLE Step 1 is a prerequisite to continuing his medical school education;

    b.   Given his history with prior examinations, Mr. Winnard is justifiably concerned that he will not pass the USMLE Step 1 without the additional extra time accommodation to which he is entitled under the ADA;

    c.   Mr. Winnard's opportunity to engage in his career of choice is effectively on hold until the NBME is compelled to comply with the ADA;

    d.   Mr. Winnard will be unable to continue the same pace of his medical school career as his peers if he is unable to pass the USMLE Step 1 at this time;

    e.   Requiring Mr. Winnard to take the USMLE Step 1 without accommodation puts him at distinct disadvantage given his disability;

    f.   Reduced performance on the USMLE Step 1 as a result of not receiving accommodation significantly reduces Mr. Winnard's future residency and professional career options; and

    g.   Mr. Winnard faces a future expulsion proceeding under the FSUCOM's policy if he takes and fails to pass the USMLE Step 1 in a timely manner.

60.    The NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

61.     The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with opportunities equal to those persons in the community without disabilities. The public interest will not be served by allowing the NBME to continue its unlawful refusal to provide Mr. Winnard with the ADA accommodations to which he is justly entitled.

62.     As a result of the NBME's violation of the ADA, Mr. Winnard has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

63.     NBME's conduct constitutes an ongoing and continuous violation of the ADA. Unless enjoined from doing so, Defendant will continue to violate said law. Said conduct, unless enjoined, will continue to inflict injuries for which Mr. Winnard has no adequate remedy at law. Consequently, Mr. Winnard is entitled to injunctive relief under the ADA, 42 U.S.C. § 12188

WHEREFORE, Plaintiff requests relief as set forth below.

**COUNT II – DECLARATORY RELIEF**

64.     Mr. Winnard incorporates by reference Paragraphs 1 through 63 as if fully set forth.

65.     A present and actual controversy exists between Plaintiff Mr. Winnard and Defendant NBME concerning their rights and respective duties. Mr. Winnard contends that NBME violated and continues to violate his rights under the Americans with Disabilities Act

as amended, 42 U.S.C. sections 12101, *et seq.*  Based upon information and belief, NBME

denies these allegations, thus declaratory relief is therefore necessary and appropriate.

      66.    Mr. Winnard seeks a judicial declaration of the rights and duties of the

respective parties accordingly.

      WHEREFORE, Plaintiff Winnard requests relief as set forth below

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment as follows:

1. Enter a preliminary injunction directing that the NBME immediately cease and desist from its refusal to accommodate Mr. Winnard's request for reasonable accommodations on the USMLE Step 1 examination and ordering that the NBME immediately comply with the ADA by allowing Mr. Winnard the requested accommodation of double the standard time and a non-distracting testing environment in which to take the USMLE Step 1 examination;

2. Enter judgment in the form of a permanent injunctive order against Defendant directing NBME to immediately cease and desist from its refusal to accommodate Mr. Winnard's request for accommodation on the USMLE Step 1 examination and any future USMLE Step 1 examinations for which Mr. Winnard is otherwise entitled to sit and for which he has made proper application and ordering NBME to comply with the ADA by allowing Mr. Winnard the requested accommodation of double the standard time and a non-distracting testing environment to take any of the USMLE Step examinations;

3. An order granting such other injunctive relief as may be appropriate;

4. An order granting declaratory relief.

5. Enter judgment against the Defendant awarding such compensatory damages as may be proven by Mr. Winnard and to which he is entitled;

6. Enter judgment against the Defendant awarding Mr. Winnard recovery

of his reasonable attorneys' fees, costs and expenses incurred in bringing and

prosecuting this litigation; and

      7.    Awarding such other and further consistent relief as may be

appropriate, in law or in equity, to which Mr. Winnard may otherwise by entitled.

Respectfully submitted

Date: 2 Nov 2010

SCOTT & WALLACE LLP

J. Clint Wallace
Florida Bar No. 59590
Scott & Wallace LLP
1168 East Tennessee Street
Tallahassee, Florida 32308
Telephone: (850) 222-7777
Facsimile: (850) 222-7778
cwallace@scottandwallacelaw.com

(Pro Hac Vice Admission pending)

Charles Weiner, Esquire
PA Attorney I.D. #52926
179 North Broad Street
Doylestown, PA 18901
Telephone: (215) 348-4283
Facsimile: (215) 340-2412
charles@charlesweinerlaw.com

(Pro Hac Vice Admission Pending)

/S/

Jo Anne Simon, Esquire (JS2793)
356 Fulton Street, 3rd Floor
Brooklyn, NY 11201
Telephone: (718) 852-3528
Facsimile: (718) 875-5728
simon.joanne@verizon.net

Attorneys for Kenneth P. Winnard

21